United States District Court
Middle District of Florida
Jacksonville Division

**LESLIE URBAS,**

    *Plaintiff,*

v.                                                                 No. 3:19-CV-855-J-34PDB

**NUTRITIOUS LIFESTYLES, INC., &**
**JANET MCKEE,**

    *Defendants.*

---

## Report and Recommendation

Before the Court in this case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, is the parties' joint motion under *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), for approval of a settlement and dismissal of the action with prejudice. Doc. 16.

## Background

In July 2019, Leslie Urbas sued Nutritious Lifestyles, Inc., and Janet McKee, on behalf of herself and others similarly situated. Doc. 1.

In the complaint, Urbas alleges the following facts. Nutritious Lifestyles is a Florida corporation. Doc. 1 ¶ 3. McKee is the owner, director, and president of Nutritious Lifestyles. Doc. 1 ¶ 3. In that capacity, she controlled employment decisions including hiring people and pay rates. Doc. 1 ¶ 3. The defendants paid Urbas and others on an hourly basis as non-exempt employees under the FLSA, and Urbas was required to work "off the clock" without recording all time. Doc. 1 ¶¶ 5–6. McKee did not allow employees to work overtime. Doc. 1 ¶ 7. Urbas and others were required to work "off the clock" to attend meetings, answer emails, and perform other

tasks without compensation. Doc. 1 ¶¶ 8–9. The defendants have been sued for other FLSA violations, and the violations here are willful. Doc. 1 ¶ 10. Employees are not allowed to accurately record all time worked, including time to log on to computers and networks, open computer programs, review emails, summarize notes from telephone calls, and complete other tasks. Doc. 1 ¶ 13. The defendants required or encouraged employees to complete those tasks without reporting it on time cards if it caused an employee to work more than 40 hours, and employees were required to clock out immediately upon reaching 40 weekly hours. Doc. 1 ¶¶ 13, 14.

Urbas contends those allegations are common to a class of hourly employees who worked for the defendants within the last three years and were not paid overtime for all hours worked. Doc. 1 ¶¶ 18–20.

Urbas brings one claim: a FLSA claim for failure to pay overtime wages, Doc. 1 ¶¶ 21–30. She seeks overtime wages; liquidated damages; attorney's fees and costs; pre- and post-judgment interest; a notice sent to all eligible employees of the right to participate in this case; a declaration that the defendants' policy violates the FLSA; and "corrective notice." Doc. 1 ¶ 30.

The defendants filed an answer denying liability. Doc. 11. They raise 26 affirmative or other defenses, including that Urbas seeks compensation for non-compensable work, she is not similarly situated to other employees, the defendants have paid all amounts due, and any violations were not willful. Doc. 11 at 5–11.

In August 2019, Urbas answered the Court's interrogatories. Doc. 10. She states she worked for the defendants from March to September 2019; McKee was her immediate supervisor; and her schedule varied weekly. Doc. 10 at 1. She states she worked as a recruiter to recruit dieticians, pre-screen applicants, and interview and train new employees. Doc. 10 at 1. She states her regular hourly rate was $27.88 plus a bonus of between $75 and $200 for every new hire she recruited. Doc. 10 at 2.  She provides an accounting of her claim from March to June 2018. Doc. 10 at 2. She states

2

she regularly worked 40 hours a week and worked approximately 15 hours of overtime each week. Doc. 10 at 2. She states the defendants paid her for 40 hours a week and did not pay any overtime. Doc. 10 at 2. She estimates she is owed $6900.30 in unpaid overtime wages: 15 hours of overtime a week multiplied by 11 weeks multiplied by $41.82 (the time-and-a-half rate based on the $27.88 hourly rate). Doc. 10 at 2. She states she first complained to the defendants through her attorney in writing in July 2019. Doc. 10 at 2. She states the defendants responded by denying wrongdoing. Doc. 10 at 3. She states she did not maintain personal records of hours worked. Doc. 10 at 3.

The defendants provided a verified summary of the hours worked and wages paid. Doc. 12. The verified summary shows the pay date (weekly), hours worked, rate of pay, any overtime hours (none), and the gross pay. Doc. 12 at 1. The summary shows Urbas usually received $1115.60 weekly. Doc. 12 at 1.

No one consented to join the action. In November 2019, the parties filed a notice they had settled. Doc. 14. The Court entered an order directing them to submit settlement documents for the Court's review if they had compromised or a notice certifying they had not compromised. Doc. 15. The parties filed the current motion to approve the settlement with a copy of the agreement. Docs. 16, 16-1.

## Motion

The parties explain that, as the case proceeded, they determined the amount of overtime worked was minimal and the payments here constitute full payment of unpaid wages plus an equal amount in liquidated damages. Doc. 16 at 2. They explain they agreed on a reasonable attorney's fee for Urbas's counsel separately from any amounts paid to her. Doc. 16 at 2, 4–5. They explain the settlement involves no fraud or collusion, each party was represented by experienced counsel, Urbas is receiving full compensation, and all parties believe the settlement is reasonable. Doc. 16 at 3–4. They explain the settlement minimizes litigation risks and further costs and they

adequately investigated the claims to make an informed settlement decision. Doc. 16 at 4. They explain the defendants will pay Urbas $4750 in unpaid wages and another $4750 in liquidated damages (for a total of $9000) and will pay Urbas's counsel full compensation of $7500. Doc. 16 at 5. They ask the Court to approve the settlement and dismiss the action with prejudice, and explain that dismissal with prejudice is a material term of the agreement. Doc. 16 at 4–5.

## Agreement

In exchange for Urbas releasing the defendants from any claims in this case and seeking settlement approval and dismissal with prejudice, the defendants agree to pay her $4750 in unpaid wages and $4750 in liquidated damages and agree to pay her counsel $7500, for a total payment of $17,000. Doc. 16-1 ¶¶ 1–2. The agreement contains a provision regarding the timing of payments, ¶ 3; a provision stating that Urbas agrees to release the defendants from all claims under the FLSA relating to her employment, ¶ 4; a provision regarding taxes, ¶ 5; a provision stating that the agreement is not an admission of fault, ¶ 6; a provision stating that the parties agree to bear their own costs and fees unless otherwise stated in the agreement, ¶ 7; a provision stating that the agreement will be governed by Florida law and any dispute will be brought in a state or federal court in Hillsborough County, Florida, ¶ 8;[1] a provision regarding fees for breaching the agreement, ¶ 9; provisions governing standard matters like execution, amendment, and construing the agreement as a whole, ¶¶ 10–12; a provision stating that Urbas does not waive other FLSA rights arising after the date of the agreement, ¶ 13; a provision regarding counterparts, ¶ 14; a provision stating that Urbas consulted with her attorney, ¶ 15; and a provision stating that Urbas has carefully read the agreement and executes it voluntarily with full knowledge of the significance, ¶ 16. Doc. 16-1.

---

[1]This report and recommendation does not address whether federal or Florida law would govern in an action seeking enforcement of the agreement.

4

### Authority

Passed in 1938, the FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). If an employee proves his employer violated the FLSA, the employer must pay him unpaid wages (for up to two years or three had the employer intentionally violated the law, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)), an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating the FLSA, 29 U.S.C. § 260), and attorney's fees and costs. 29 U.S.C. § 216(b).

To foster the FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit, in *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), placed limits on the ability of private parties to settle a FLSA case. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013). To do so, they must present their agreement to the court, and the court must scrutinize it for fairness. *Id.* at 1306–07. If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's*, 679 F.2d at 1354.

A court should presume a settlement is fair and reasonable. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Factors pertinent to fairness and reasonableness may include (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994).

"FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Besides reviewing a compromise of a FLSA claim, a court must "award a reasonable attorney's fee to [the plaintiff's] counsel," *id.* at 352, and must "insure that no conflict has tainted the settlement," *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness. *Bonetti,* 715 F. Supp. 2d at 1228.

## Analysis

Based on the parties' representations and a review of the complaint, the answer and affirmative defenses, Urbas's answers to the Court's interrogatories, the defendants' verified summary, the motion to approve the settlement, and the settlement agreement, the settlement is fair.[2]

The parties had an opportunity to consult with experienced counsel and entered into the agreement knowingly and voluntarily. Doc. 16 at 3–4, Doc. 16-1 ¶ 16. Urbas claims unpaid overtime and liquidated damages, and, while denying liability, the defendants are paying all overtime owed with an equal amount in liquidated

---

[2]If a case filed as a FLSA collective action is settled *after* conditional certification of a collective action, the court may consider whether final certification is appropriate before approving a settlement. *Compare, e.g., Ruddell v. Manfre*, No. 3:14-cv-873-J-34MCR, 2015 WL 7252947, at *1–3 (M.D. Fla. Nov. 17, 2015) (unpublished) (deeming consideration of final certification necessary), *with Campbell v. Pincher's Beach Bar Grill Inc.*, No. 2:15-cv-695-FtM-99MRM, 2017 WL 3700629, at *1–2 (M.D. Fla. Aug. 24, 2017) (unpublished), *report and recommendation adopted*, 2017 WL 3668889 (deeming consideration of final certification unnecessary).

Because Urbas has not moved for conditional certification of a collective action, no special consideration is required for a fairness review under *Lynn's Food*. This Court has approved individual FLSA settlements without special analysis where the Court had not yet granted conditional certification. *See, e.g., Serino v. Enhanced Recovery Co., LLC*, No. 3:15-cv-1418-J-25PDB, 2017 WL 11048878, at *3 (M.D. Fla. Feb. 9, 2017) (unpublished), *report & recommendation adopted*,

6

damages and a separately negotiated amount for attorney's fees. Doc. 16 at 2. There is no stated or apparent collusion. Without a settlement, the parties would have to continue discovery, possibly engage in motion practice, and possibly proceed to trial, and Urbas would risk receiving nothing. The parties and their counsel believe the settlement is reasonable. Doc. 16 at 2.

The agreement contains no provisions commonly found objectionable, and the motion does not ask the Court to retain jurisdiction to enforce the agreement.[3]

On attorney's fees and costs, given the parties' representation they agreed on the attorney's fees separately from the amounts to Urbas, the Court need not undertake a lodestar review. *See* Bonetti, 715 F. Supp. 2d at 1228. Moreover, the fees and costs appear reasonable considering the time necessary to prepare and file a complaint, answer the Court's interrogatories, review discovery, and engage in settlement efforts.

**Recommendation**

I recommend:

1. **granting** the parties' motion, Doc. 16, and approving the parties' settlement, Doc. 16-1, as a fair and reasonable resolution of the disputed issue of liability;

---

[3]Some judges will not approve an agreement to settle a FLSA overtime claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351−52 (M.D. Fla. 2010).

Some judges will strike a non-disparagement provision because its placement of a prior restraint on one's ability to speak freely about the case contravenes public policy and the First Amendment. *See, e.g., Loven v. Occuquan Grp. Baldwin Park Corp.*, No. 6:14-cv-328-Orl-41TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014) (unpublished).

Some judges will strike a no-reemployment provision because its impact could be substantial and result in an unconscionable punishment for asserting FLSA rights. *See, e.g., Nichols v. Dollar Tree Stores, Inc.,* No. 1:13–cv–88(WLS), 2013 WL 5933991, at *5–6 (M.D. Ga. Nov. 1, 2013) (unpublished).

2.      **dismissing** the case with prejudice; and

3.      **directing** the Clerk of Court to close the file.[4]

**Done** in Jacksonville, Florida, on January 2, 2020.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:      The Honorable Marica Morales Howard
        Counsel of Record

---

[4]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.